[No. S104851. May 17, 2004.]

JOSHUA LEE HAYNES, Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

1200

COUNSEL

James C. Caviola, Jr., and Jean Ballantine for Plaintiff and Appellant.

Robinson, Calcagnie & Robinson and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, Barry R. Levy, Mitchell C. Tilner, Daniel J. Gonzalez; Chapin Shea McNitt & Carter, Richard D. Carter and Robin James for Defendant and Respondent.

Grant, Genovese & Baratta and Lance D. Orloff for California Capital Insurance Company as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**WERDEGAR, J.**—The question presented is whether a provision in defendant's "E-Z Reader Car Policy" of automobile insurance purporting to limit to the legal minimum any coverage for permissive users of an insured vehicle is sufficiently conspicuous, plain and clear to be enforceable. The Court of Appeal concluded it is not. We affirm.

### Background

William M. Gallahair purchased an "E-Z Reader Car Policy" (the policy) from defendant Farmers Insurance Exchange (Farmers). The policy is 39 pages long.[1] A declarations page, the policy's first, states that "COVERAGES" are $250,000 per person and $500,000 per occurrence for bodily injury, and $100,000 for property damage. The declarations page also provides defendant's company name, the insured's (i.e., Gallahair's) name and address, the policy number, the insurance agent's name and contact information, a description of the insured vehicle, and other miscellaneous information.

Two-thirds of the way down the declarations page on the left-hand side appears a box labeled "ENDORSEMENT NUMBERS." Within this box are 11 alphanumeric entries, each five characters long—a letter followed by four digits. The eighth alphanumeric entry listed in the endorsement numbers box is "S9064." Nothing in the box, or anywhere on the declarations page, defines or explains "ENDORSEMENTS" or indicates the title, location, subject matter, or substance of "S9064" or any of the other entries in the box.

Inserted between the policy's second and fourth pages is a letter to "Dear Customer," which states: "The accompanying Declarations Page shows your current coverages resulting from recent changes made to your policy. Please review your policy changes and file them in a safe place with your original policy document." No specific changes are identified.

The policy's fourth page (numbered "1") is entitled "Index of Policy Provisions." Under part I, "Liability," the index contains, inter alia, entries for "Coverage," "Exclusions," "Limits of Liability," and "Other Insurance," referencing page numbers for each. No reference to permissive users, or any limitation on permissive user coverage, appears in the index.[2]

---

[1] The main body of the policy is 19 pages. The remainder of the policy consists of endorsements.

[2] At the bottom of this page appears a notice: "ANY ADDITIONAL PROVISIONS AFFECTING YOUR POLICY ARE ATTACHED AS 'ENDORSEMENTS' . . . READ YOUR POLICY CAREFULLY."

On the policy's seventh page (numbered "4"), in the "LIABILITY" section, "insured person" is defined as including "Any person using your insured car."[3] On the policy's ninth page (numbered "6"), under "Limits of Liability," the bodily injury and property damage liability limits for "each person" and "each occurrence" shown in the declarations on the first page are explained. Neither on the declarations page nor in the "Limits of Liability" section appears any indication such limits are different for persons "using your insured car."

Also in the "LIABILITY" section, on the policy's 10th page (numbered "7") under the subheading "Other Insurance," the policy advises that, for "an insured person, other than you or a family member," coverage is provided "up to the limits of the Financial Responsibility Law only."

Endorsement S9064 is on the policy's 24th page. Entitled "PART I—LIABILITY—PERMISSIVE USER LIMITATION," the endorsement is contained within a box occupying the upper half of the page, the lower half of which is blank, and comprises 19 lines of text. Various purported amendments to "Your E-Z Reader Car Policy, Your E-Z Reader Motorcycle Policy and Your Motor Home Plus Policy" are stated in these 19 lines. Of pertinence here, endorsement S9064 in its eighth paragraph (lines 11 and 12) states: "In Your E-Z Reader Car Policy, the second paragraph under PART I—LIABILITY, 'Other Insurance' is deleted" and in its penultimate paragraph (lines 15–17) states: "We will provide insurance for an Insured person, other than you, a family member or a listed driver, but only up to the minimum required limits of your state's Financial Responsibility Law of $15,000 per person and $30,000 per occurrence for bodily injury, and $5,000 for property damage."

Plaintiff Joshua Lee Haynes alleges that while the policy was in force, Gallahair permitted Christopher Charles Morrow to borrow and drive his insured automobile. Plaintiff was injured while riding as Morrow's passenger. Plaintiff sued Morrow and Gallahair in tort to recover damages for his injuries. Farmers defended. In answers to interrogatories, Farmers asserted that coverage under the policy for plaintiff's accident is defined not by the "COVERAGES" of $250,000/$500,000/$100,000 listed on the declarations page, but by the language in endorsement S9064 limiting permissive user coverage to $15,000/$30,000/$5,000. Subsequently, plaintiff filed this separate action for declaratory relief, seeking a declaration of the rights and liabilities between himself and Farmers, specifically a declaration that the endorsement's limitation of permissive user coverage is unenforceable.

---

[3] Further down that same page appears a notation that "Insured person does not mean: . . . . Any person who uses a vehicle without having sufficient reason to believe that the use is with the permission of the owner."

The trial court granted Farmers' motion for summary judgment. The Court of Appeal reversed. For the following reasons, we affirm.

## Discussion

■ This case comes to us on cross-motions for summary judgment. As the material facts are not disputed, interpretation of the policy presents solely a question of law. (*State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123].)

■ " 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' " (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].) Accordingly, in interpreting an insurance policy, we seek to discern the mutual intention of the parties and, where possible, to infer this intent from the terms of the policy. (Civ. Code, §§ 1636, 1639; *Palmer v. Truck Ins. Exchange, supra*, at p. 1115.) When interpreting a policy provision, we gives its words their ordinary and popular sense except where they are used by the parties in a technical or other special sense. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

■ In the insurance context, "we begin with the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again 'any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.' " (*State Farm Mut. Auto. Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 201 [110 Cal.Rptr. 1, 514 P.2d 953].) Coverage may be limited by a valid endorsement and, if a conflict exists between the main body of the policy and an endorsement, the endorsement prevails. (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 50, fn. 4 [70 Cal.Rptr.2d 118, 948 P.2d 909].) But to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be "conspicuous, plain and clear." (*Steven v. Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284] (*Steven*).) Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson. (*National Auto. & Casualty Ins. Co. v. Stewart* (1990) 223 Cal.App.3d 452, 458 [272 Cal.Rptr. 625]; *Ponder v. Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 719, 723 [193 Cal.Rptr. 632].) The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer. (*State Farm Mut. Auto. Ins. Co. v. Jacober, supra*, at pp. 201–202; *Harris v. Glens·Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861].)

Applying these well-established principles, Farmers clearly may not rely to limit coverage on the permissive user language in the main body of the policy. That language, which appears on the policy's 10th page (numbered "7") as the second of four paragraphs under the heading "Other Insurance," is not conspicuous, plain and clear. There is nothing in the heading to alert a reader that it limits permissive user coverage, nor anything in the section to attract a reader's attention to the limiting language. As Farmers acknowledges, an identical limitation on permissive user coverage in an E-Z Reader Car Policy was invalidated as "inconspicuous and vague" by the Court of Appeal in *Jauregui v. Mid-Century Ins. Co.* (1991) 1 Cal.App.4th 1544, 1547 [3 Cal.Rptr.2d 21] (*Jauregui*).

In light of *Jauregui*, Farmers disclaims any reliance on the permissive user limitation in the main body of the policy, resting its case entirely on the limitation in endorsement S9064. Farmers proposes two justifications for enforcing the limitation that appears in endorsement S9064: first, it is conspicuous, plain and clear; second, even if not conspicuous, plain and clear, the limitation may be enforced without defeating the reasonable expectations of Farmers' insureds. Farmers fails to demonstrate either proposition.

*Endorsement S9064, lines 15–17*

In addition to the Court of Appeal below, of the Courts of Appeal that have considered limitations on automobile liability coverage for permissive users that were similarly printed and positioned to the one in endorsement S9064, a majority has held them to be unenforceable. (Compare *Thompson v. Mercury Casualty Co.* (2000) 84 Cal.App.4th 90 [100 Cal.Rptr.2d 596] (*Thompson*) [decided by the Fourth Dist. Ct.App. (unenforceable)] and *Jauregui, supra*, 1 Cal.App.4th 1544 [decided by the Third Dist. Ct.App. (unenforceable)], with *Hartford Casualty Ins. Co. v. Mid-Century Ins. Co.* (1994) 26 Cal.App.4th 1783 [32 Cal.Rptr.2d 351] [decided by the Sixth Dist. Ct.App. (enforceable)] and *Mid-Century Ins. Co. v. Haynes* (1990) 218 Cal.App.3d 737 [267 Cal.Rptr. 248] [same].)

*Thompson, supra*, 84 Cal.App.4th 90, and *Jauregui, supra*, 1 Cal.App.4th 1544, both examined provisions, as in this case, purporting to limit coverage for permissive users to the limits of the Financial Responsibility Law. As previously noted, in *Jauregui*, the limitation was placed in the main body of the policy under the heading "Other Insurance" (see *Jauregui, supra*, at p. 1547); in *Thompson*, the limitation appeared, as here, on a page at the back of the policy (see *Thompson, supra*, at p. 97). In both cases, the courts held the provisions unenforceable because they were inconspicuous. (See *Thompson, supra*, at pp. 97–98; *Jauregui, supra*, at pp. 1549–1550.)

In *Jauregui*, the court noted that "[t]he definition of the insured, appearing at the outset of the liability section, gives every indication that a permissive driver stands in the same position as the insured and receives the same coverage. The average policyholder would reach the same conclusion by continuing to read the policy. The coverage limitation for permissive drivers is not contained within one of the subheadings that might alert the reader to a partial exclusion. Rather, it appears within a subsection whose ordinary language would not encompass the limitation and is surrounded by language that has nothing to do with exclusions or limitations on coverage." (*Jauregui, supra*, 1 Cal.App.4th at pp. 1549–1550.)

In *Thompson*, the court concluded that the permissive user limitation was "inconspicuously located on the last page of the policy. Permissive users are included in the definition of 'Persons Insured' on the first page of the policy. [Moreover,] . . . the liability limitations for permissive users . . . [are] nowhere to be found in the 'Liability' section of the policy. [¶] Strangely enough, the policy contains two numbered sections and one unnumbered section entitled 'Conditions.' The unnumbered section contains 30 random and unrelated subsections. Therein lies the permissive user coverage provision, Condition 23. . . . [T]he language in Condition 23 is not bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set apart, or in any other way distinguished from the rest of the fine print." (*Thompson, supra*, 84 Cal.App.4th at p. 97.)

For reasons similar to the foregoing, we agree with the Court of Appeal below that a layperson would not find the instant permissive user limitation to be conspicuous, plain and clear.

*Conspicuousness*

More specifically, the permissive user limitation is not conspicuous. Endorsement S9064, in which the limitation appears, is listed on the policy's declarations page only by its alphanumeric designation ("S9064"), along with 10 other endorsements. As the Court of Appeal observed, no reason appears why the actual dollar coverages for permissive users could not have been placed with the policy coverages on the declarations page, where one would expect an insured to look to determine the policy limits. The deficiencies in Farmers' approach do not, however, depend on the lack of such placement per se.

First, nothing on the declarations page alerts a reader to the fact that endorsement S9064 contains a paragraph limiting coverage for permissive users to amounts less than the policy coverages prominently displayed in specific dollar amounts on that same page. Indeed, the declarations page does

not reveal the subject matter or substance of any of the endorsements, nor does it state that the endorsements constitute part of the policy and amend the policy. To receive the latter notification, a reader must proceed to the bottom of the policy's fourth page (numbered "1").[4] The only apparent references to the policy's endorsements that appear on the declarations page, except for the alphanumeric list, are two phrases placed among others in a box positioned immediately to the right of the "ENDORSEMENT NUMBERS" box. Labeled "MESSAGES / RATING INFORMATION," the box, which is only half full, contains the cryptic notation: "COVERAGE FOR E1167 IS K5" and "COVERAGE FOR E9007 IS C-2."[5] The "MESSAGES / RATING INFORMATION" box contains no message informing a reader that endorsement S9064 discusses permissive users or limits coverage. Not unless or until a reader has turned to and examined the policy's 24th page—after perusing pages containing language relating, inter alia, to "MEXICO COVERAGE," "BUSINESS USE," and "CUSTOMIZING EQUIPMENT," along with a page "LEFT INTENTIONALLY BLANK"—does the reader learn that the policy contains an endorsement entitled "PART I—LIABILITY—PERMISSIVE USER LIMITATION."

Second, within endorsement S9064, the language of the permissive user limitation "is not bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set apart, or in any other way distinguished from the rest of the fine print." (*Thompson, supra*, 84 Cal.App.4th at p. 97.) Although the title of endorsement S9064 refers in capital letters to "PERMISSIVE USER," that term is nowhere defined in the policy, so its significance might, contrary to the dissent's assertion (dis. opn., *post*, at p. 1221), escape the average lay reader notwithstanding the capitalization.[6] The title also indicates endorsement S9064 contains a "LIMITATION," but does not state that the limitation concerns liability coverage amounts. The text of the permissive user limitation contains a few scattered terms that have been bolded, apparently because they are terms defined elsewhere within the policy, but as the other 10 paragraphs in endorsement S9064 do so as well, nothing about this scattered bolding of terms attracts attention to the permissive user limitation. (See dis. opn., *post*, at p. 1221.) Consequently, the permissive user limitation is not "positioned in a place and printed in a form which would attract a reader's attention."

---

[4] See footnote 2, *ante*.

[5] The alphanumeric designation E1167 appears in the endorsement numbers box, but no endorsement so numbered is attached. Endorsement E1187 is attached to the policy but not listed among the endorsements. The alphanumeric designation E9007 also appears in the endorsement numbers box, and an endorsement so numbered is attached. It contains, among other provisions, a section entitled "Option C-2."

[6] With respect, we disagree with our dissenting colleague's focus on "ambiguity" (dis. opn., *post*, at pp. 1217, 1221), where the issue is whether the permissive user limitation is *conspicuous, plain and clear.*

(*Ponder v. Blue Cross of Southern California, supra*, 145 Cal.App.3d at p. 719.)

■ Unquestionably, California insurers may rely on endorsements to modify printed terms of a form policy. Moreover, our jurisprudence indicates that where the terms of an effective endorsement conflict with terms in the main body of such a policy, the endorsement controls. (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 431 [296 P.2d 801].) But neither the prevalence of endorsements in the industry nor our recognition that they may validly modify an insurance policy diminishes an insurer's burden in notifying insureds of reductions in otherwise reasonably expected coverage. (See *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1281–1282 [31 Cal.Rptr.2d 433].) "While the insurer has every right to sell insurance policies by methods of mechanization, and present-day economic conditions may well justify such distribution, the insurer cannot then rely upon esoteric provisions to limit coverage. If it deals with the public upon a mass basis, the notice of noncoverage of the policy, in a situation in which the public may reasonably expect coverage, must be conspicuous, plain and clear." (*Steven, supra*, 58 Cal.2d at p. 878.)

Farmers can accurately claim to have partly addressed *Jauregui*'s concerns about the permissive user limitation's placement in the E-Z Reader Car Policy. (See *Jauregui, supra*, 1 Cal.App.4th at p. 1550.) Endorsement S9064 provides that its new permissive user limitation "is added to the 'Limits of Liability' " section of the policy, thus responding to the court's observation that the limiting language in the body of the policy did not appear in either of the two subheadings—"Exclusions" or "Limits on Liability"—where an insured would be likely to look (*id.* at p. 1549). But in so providing, Farmers has addressed only one of the deficiencies *Jauregui* identified in the course of concluding that "the average lay reader, attempting to locate coverage provided for permissive drivers, would have a difficult time locating the limiting language" (*id.* at p. 1550). Other deficiencies noted by the *Jauregui* court remain unaddressed. For example, the definition of the insured, appearing at the outset of the liability section, still "gives every indication that a permissive driver stands in the same position as the insured and receives the same coverage." (*Id.* at p. 1549.) A permissive user limitation still is found in the subsection on "Other Insurance," even though it "has nothing to do with insurance from any other source." (*Ibid.*) And the permissive user limitation itself in endorsement S9064 remains "surrounded by language that has nothing to do with exclusions or limitations on coverage." (*Id.* at p. 1550.) Like the *Jauregui* majority, we are "not satisfied that a policy purportedly designed for comprehensibility and clarity succeeds in limiting coverage as long as the language appears somewhere within the appropriate section." (*Ibid.*)

Of course, the policy at issue in this case does not actually have the physical form described in endorsement S9064, i.e., it is not a policy from which the older permissive user limitation has been physically excised and into which endorsement S9064's new limitation has been physically inserted. Rather, it is a policy containing older limiting language that has been declared invalid, to which has been appended an endorsement of questionable conspicuousness that contains new language and instructions about where the new language is to be *read* as appearing. But merely stating, as does endorsement S9064, that a particular provision "is deleted" from the existing policy and a new provision "is added" in another place or places—even with a proviso that the statement "is part of your policy"—does not produce a result as conspicuous as would providing a new document in which the changes actually have been physically incorporated.

█ Our jurisprudence respecting conspicuousness, consistently with the inherent logic of that concept, refers to how a coverage-limiting provision actually has been positioned and printed within the policy at issue. (*Ponder v. Blue Cross of Southern California, supra*, 145 Cal.App.3d at p. 719.) In evaluating its conspicuousness, accordingly, we must consider the permissive user limitation's actual placement in the actual physical policy that was presented to Farmers' insureds. "The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." (*Crane v. State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129].)

Endorsement S9064, as mentioned, appears on the 24th page of the policy. It first amends the definition of "Insured person" as used in the liability part of the policy to add and define a "listed driver." Six lines later, it declares deleted an item in "Your Motor Home Plus Policy." Thereafter, it declares deleted "in your E-Z Reader Car Policy, the second paragraph under PART I—LIABILITY, 'Other Insurance.' " The permissive user limitation then appears: three lines of ordinary type, in the least conspicuous position on the page, purporting to limit permissive user coverage "to the minimum required limits" of the Financial Responsibility Law, as described.[7] We agree with the Court of Appeal that burying the permissive user limitation among such provisions renders it inconspicuous and potentially confusing to the average lay reader. From such a reader's point of view, the instant policy is not a significant improvement over the policies in *Jauregui* and *Thompson*, where the coverage limitations were invalidated.

---

[7] In specifying the dollar amounts of the minimum required limits of the law, Farmers addressed the *Jauregui* court's concern that the terminology "Financial Responsibility Law" had not been defined. (See *Jauregui, supra*, 1 Cal.App.4th at p. 1551.)

We do not quarrel with Farmers that "perfection in presentation is unattainable." But no authority supports the notion that a provision presented in an endorsement, no matter how printed or where placed, is conspicuous per se. To the contrary, it is well established that "mere receipt of [an endorsement] . . . does not serve to charge the insured with constructive knowledge of [an] exclusion" it contains. (*Underwriters Ins. Co. v. Purdie* (1983) 145 Cal.App.3d 57, 65 [193 Cal.Rptr. 248].) Nor does the fact the permissive user limitation appears in an endorsement necessarily diminish—with respect to the issue of conspicuousness—the significance of the fact that "it appears only after [many] long and complicated page[s] of fine print . . . ." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168].)

Farmers cites *Merrill & Seeley, Inc. v. Admiral Ins. Co.* (1990) 225 Cal.App.3d 624, 631 [275 Cal.Rptr. 280], for its statement that an exclusion of retroactive coverage was conspicuous because the cover page directed the insured to the provisions at issue in the policy. But unlike the declarations page in this case, the cover page in *Merrill* contained language actually referring the reader to the critical provision " 'as per form attached' " (*ibid.*). Whereas this referring language and a key date on the cover page in *Merrill* "adequately alert[ed] the reader that there [were] important limits on coverage" (*ibid.*), the same cannot be said of Farmers' cryptic alphanumeric designation, "S9064." Moreover, contrary to the dissent's suggestion (dis. opn., *post*, at p. 1218), neither Farmers' cursory and unexplained reference to "recent changes" in a form letter inserted in the policy nor the index's global reminder that the policy contains "certain exclusions" calls attention either to endorsement S9064 or to the permissive user limitation.

■ Farmers and our dissenting colleague (dis. opn., *post*, at p. 1217) cite *Fields v. Blue Shield of California* (1985) 163 Cal.App.3d 570, 578 [209 Cal.Rptr. 781], for its statement that "an insured has a duty to read his policy." But the general rule that "a party is bound by contract provisions and cannot complain of unfamiliarity" with them (*ibid.*) does not dispose of this case. As *Fields* itself recognizes, the duty to read "is insufficient to bind a party to unusual or unfair language unless it is brought to the attention of the party and explained." (*Ibid.*)

■ For nearly a hundred years we have recognized that " 'the rule [presuming parties are familiar with contract terms] should not be strictly applied to insurance policies. It is a matter almost of common knowledge that a very small percentage of policy-holders are actually cognizant of the provisions of their policies . . . . The insured usually confides implicitly in the agent securing the insurance, and it is only just and equitable that the company should be required to call specifically to the attention of the policy-holder

such provisions as the one before us.' " (*Raulet v. Northwestern etc. Ins. Co.* (1910) 157 Cal. 213, 230 [107 P. 292] [discussing a lien provision].) Thus, an insurer's direction to the subscriber to read the entire policy "is not a substitute for notice to the subscriber of a loss of benefit." (*Fields v. Blue Shield of California, supra,* 163 Cal.App.3d at p. 583.)

The cases Farmers cites therefore do not insulate the permissive user limitation from the general requirement that, as a coverage reduction, it must be conspicuous. As has been explained in detail, Farmers "does not meet its stringent obligation to alert a policyholder to limitations on anticipated coverage by hiding the disfavored language in an inconspicuous portion of the policy." (*Jauregui, supra,* 1 Cal.App.4th at p. 1550.) Like the cross-references found insufficient in *Thompson,* Farmers' unadorned alphanumeric reference to endorsement S9064 on the declarations page is "ineffective in alerting the reader to the important limitations contained on [a] back page of the policy." (*Thompson, supra,* 84 Cal.App.4th at p. 98.) "The exclusionary clause . . . upon which the insurance company relies, is an unexpected one." (*Steven, supra,* 58 Cal.2d at p. 884.)

*Plainness and clarity*

■ "Conspicuous placement of exclusionary language is only one of two rigid drafting rules required of insurers to exclude or limit coverage. The language itself must be plain and clear. [Citation.] 'This means more than the traditional requirement that contract terms be "unambiguous." Precision is not enough. Understandability is also required.' " (*Jauregui, supra,* 1 Cal.App.4th at p. 1550.)[8]

Judged in light of these requirements, the permissive user limitation is not plain and clear. Although the term "permissive user" appears in the title of the endorsement containing the limitation, the term is nowhere defined, neither in the policy nor the endorsement, for the average lay reader. While an attorney or an insurance professional likely could deduce from close examination of the entire document that permissive user refers to "an insured person, other than you, a family member or a listed driver" (the phrase that appears in the permissive user limitation itself) and, by cross-referencing to the definition of insured person in the liability section, that such an "insured person" is "Any person using your insured car" but not "Any person who uses a vehicle without having sufficient reason to believe that the use is with the owner's permission," the average lay reader encountering the term in the title of endorsement S9064 would not necessarily understand its significance. Endorsement S9064, moreover, contains confusing language surrounding and

---

[8] See foonote 6, *ante.*

introducing the actual text of the permissive user limitation, along with confusing cross-references to other insurance policies Farmers' insured did not possess. Thus, contrary to the claim on the cover page of Farmers' E-Z Reader Car Policy, the policy is *not* "written in non-technical easy-to-read style."

Additionally, endorsement S9064 purports to effect insertion of the permissive user limitation at two different points in the policy, including a reinsertion at the point where the Court of Appeal in *Jauregui* indicated the average lay reader "would have a difficult time locating" it. (*Jauregui, supra,* 1 Cal.App.4th at p. 1550.) The endorsement states that the permissive user limitation is added to *both* "the 'Limits of Liability' and 'Other Insurance' sections." (See generally *Thompson, supra,* 84 Cal.App.4th at p. 97.) Directing the insured to insert the permissive user limitation into the "Other Insurance" section may erroneously cause the insured to believe the limitation applies only if the policyholder has other insurance. (See *Jauregui, supra,* 1 Cal.App.4th at pp. 1549–1550.) Combined with Farmers' failure to define "permissive user," the repeated cross-references in endorsement S9064 to policies other than the car policy, and the confusing language surrounding and introducing the permissive user limitation, these dual-insertion directions seriously impair the clarity with which the limitation imparts its intended message that some portion or aspect of the insurance provided by the policy is extended "only up to the minimum required limits of your state's Financial Responsibility Law."

Especially as "an exclusion is subjected to the closest possible scrutiny" (*Ponder v. Blue Cross of Southern California, supra,* 145 Cal.App.3d at p. 718) and judged from the perspective of an average layperson (*Thompson, supra,* 84 Cal.App.4th at p. 97), we conclude that Farmers has not met its burden to phrase exceptions and exclusions in " 'clear and unmistakable language' " (*State Farm Mut. Auto. Ins. Co. v. Jacober, supra,* 10 Cal.3d at p. 202). For all of the foregoing reasons, we agree with the Court of Appeal that the permissive user limitation is not conspicuous, plain and clear.[9]

---

[9] We do not in so holding suggest that Farmers necessarily must correct all of the identified deficiencies in order to render a permissive user limitation enforceable in future cases. Nor have we the expertise to dictate the precise wording or placement of such a limitation an insurer must adopt in order to satisfy the established legal standard. Indeed, "we do not rewrite any provision of any contract, including the standard policy underlying any individual policy, for any purpose." (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 967–968 [103 Cal.Rptr.2d 672, 16 P.3d 94]; see also *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 871 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) There may be a number of ways for Farmers to correct the problem.

*Insured's reasonable expectations*

█ With some exceptions, Insurance Code section 11580.1, subdivision (b)(4) requires every automobile liability insurer to provide permissive user coverage to the same extent as that afforded to the named insured. One exception, applicable here, is that Insurance Code section 11580.1, subdivision (a) provides that the requirements of subdivision (b)(4) do not apply to any policy that exceeds the minimum financial responsibility requirements ($15,000/$30,000/$5,000) of Vehicle Code section 16056, subdivision (a).
█ Because the policy here ($250,000/$500,000/$100,000) provided the named insured with liability insurance greater than the Vehicle Code's minimum requirements, Farmers had no initial duty to indemnify a permissive user for damages exceeding those requirements. But Farmers included "[a]ny person using your insured car" within its definition of "insured person," thus raising a reasonable expectation that permissive user coverage would be coextensive with that for other insureds. Consequently, any limitation on permissive user coverage, to be enforceable, was required to be conspicuous, plain and clear. (*Steven, supra,* 58 Cal.2d at p. 878.)

Farmers, however, contends the permissive user limitation need not be conspicuous, plain and clear because it does not defeat the reasonable expectations of the contracting party. Relying on the dissenting opinion in *Jauregui, supra,* 1 Cal.App.4th at page 1553, Farmers argues that a limitation on coverage for a permissive user has no significance for the policyholder.

The dissent on which Farmers relies asserted, without authority, that insurance purchasers are not "motivated to provide insurance that provides benefit only to the permissive user and the victim of his negligence and no benefit to the insured." (*Jauregui, supra,* 1 Cal.App.4th at p. 1554 (dis. opn. of Marler, J.).) The assertion is not self-evidently true. The mere fact an insured may be legally protected from liability when a permissive user kills or injures another does not mean the insured is indifferent to compensating those victims.

In some circumstances, an automobile owner's liability for injuries caused by a permissive user is statutorily limited,[10] but contrary to the dissent in *Jauregui,* it does not follow that "a reasonable insured would not care if the exclusion or limiting clause [reducing permissive user coverage] applies" (*Jauregui, supra,* 1 Cal.App.4th at p. 1554 (dis. opn. of Marler, J.)). Even assuming, as seems doubtful, that the average lay insurance shopper is acquainted with the various statutes that circumscribe automobile owners'

---

[10] See, e.g., Vehicle Code section 17151, limiting civil liability of automobile owners to $15,000 per person and $30,000 per occurrence for bodily injury and $5,000 per occurrence for property damage.

liability and, in addition, has no interest either in victim compensation or in being able to assure permissive users of coverage in case of an accident, such an insured reasonably might prefer to have the maximum possible liability limits available to a permissive user. Otherwise, the insured will face a greater risk of being independently named as a defendant (as, for example, in a negligent entrustment action[11] by a victim deciding to allege such against the insured owing to a negligent permissive user's having been underinsured).[12]

California courts have recognized that an insured bargains for liability limits not only for himself, but also for permissive users. Indeed, "liability limits are among the few policy features actually bargained for between the insurer and insured. . . . [And,] even if an insured does not specifically seek out high limits of coverage for permissive users," he generally expects that any increases in liability limits will apply to everyone covered. (*Thompson*, *supra*, 84 Cal.App.4th at p. 97.)[13]

More importantly, even if Farmers were correct that reasonable insureds do not shop for permissive user coverage, it would not follow that the permissive user limitation here defeats no relevant expectations. "It is not our role to speculate on the policyholder's abstract expectations, but rather to consider reasonable expectations defined by the insurer's policy language." (*Jauregui*, *supra*, 1 Cal.App.4th at p. 1552, fn. 1.) And the question whether Farmers' E-Z Reader Car Policy creates a reasonable expectation that permissive user coverage equals other coverage already has been answered in the affirmative. (See *Jauregui*, *supra*, at pp. 1551–1553.) Applying "well-accepted rules of construction of insurance contracts to ascertain what reasonable expectations were created by the insurer in drafting its E-Z Reader Car Policy" (*id.* at

---

[11] See *Hartford Accident & Indemnity Co. v. Abdullah* (1979) 94 Cal.App.3d 81, 90–91 [156 Cal.Rptr. 254]; *Ohio Farmers Indem. Co. v. Interinsurance Exchange* (1968) 266 Cal.App.2d 772, 774–775 [72 Cal.Rptr. 269].

[12] At oral argument, counsel for Farmers speculated that, in a particular case where the named insured and a permissive user were both sued and the damages sought exceeded the policy limits, a rational insured might, depending on the circumstances, prefer that permissive user coverage be limited so that a greater fraction of the total insurance available under the policy would be available for settlement of the claim against himself. The theoretical possibility that a specific insured might prefer limited permissive user coverage if faced with such a scenario, however, does not change the fact that, generally, "a reasonable layperson expects that when one increases one's insurance liability limits, such changes apply universally to everyone covered under the policy" (*Thompson*, *supra*, 84 Cal.App.4th at p. 97).

[13] At least some of those who market insurance today would appear to agree. (See, e.g., Billboards at Interstate 880 (South) near 23d Avenue exit, Alameda, and at 10th and Folsom Streets, San Francisco (as of Dec. 30, 2003) [automobile liability insurer advertises that, under its policies, "We Cover Your Friends Like We Cover You"]; "Get More," Internet Web site <http://www.21st.com/company/getMore/coverage/coverage.jsp> (as of May 17, 2004) [advertising five insurers that will "[e]xtend[] your policy coverage and limits—at no additional charge—to any licensed driver given permission to drive your car"].)

p. 1552, fn. 1), the majority in *Jauregui* concluded that an insured "could reasonably expect, based on the policy's definition of insured, that coverage extended to '[a]ny person using [his] insured car.' Having created a reasonable expectation of coverage for permissive users coextensive with that of the named insured, defendant was required to cast coverage restrictions in plain and clear language which was conspicuously displayed." (*Ibid.*) The same is true here.

We conclude that Farmers' argument that the permissive user limitation need not be conspicuous, plain or clear because it does not defeat insureds' reasonable expectations is without merit.

### Disposition

For the foregoing reasons, we affirm the judgment of the Court of Appeal.[14]

George, C. J., Kennard, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.**—I concur but write separately to clarify my understanding of the majority's holding. Finding the provision purporting to limit the coverage for permissive users of an insured vehicle neither conspicuous, plain nor clear, the majority notes that Farmers Insurance Exchange (Farmers) need not necessarily "correct all of the identified deficiencies in order to render a permissive user limitation enforceable" and that "[t]here may be a number of ways for Farmers to correct the problem." (Maj. opn., *ante*, at p. 1212, fn. 9.) In doing so, I assume the majority is eschewing any suggestion that insurers, when making policy changes, must or should issue a new document which physically incorporates these changes. Indeed, such a suggestion would create an administrative nightmare for both insurers and insureds, and likely result in more confusion over the scope of coverage. Thus, our decision today does not, in any way, preclude insurers from making policy changes through endorsements attached to the end of existing policies. (See, e.g., *Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 430–432 [296 P.2d 801] [enforcing two endorsements that were not physically incorporated into a new document].)

**BAXTER, J.**—I respectfully dissent.

Like many insurance policies, William Gallahair's "E-Z Reader Car Policy" incorporates several preprinted policy forms and endorsements that are

---

[14] *Hartford Casualty Ins. Co. v. Mid-Century Ins. Co.*, *supra*, 26 Cal.App.4th 1783 and *Mid-Century Ins. Co. v. Haynes*, *supra*, 218 Cal.App.3d 737 are disapproved to the extent they are inconsistent with this opinion.

identified on the declarations page. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2002) ¶ 3:66, pp. 3-12 to 3-13.) Among the several endorsements the declarations page identifies is endorsement S9064, which expressly amends the policy to limit the insurer's liability for permissive users to the statutorily required minimum of $15,000 per person, $30,000 per occurrence for bodily injury, and $5,000 for property damage. (See Ins. Code, § 11580.1; Veh. Code, § 16056, subd. (a).) The question here is whether the permissive user limitation is valid and enforceable. I believe it is: the limitation appears conspicuously in the endorsement, and its language is plain and clear.

An endorsement is an amendment to or modification of an existing insurance policy. (*Adams v. Explorer Ins. Co.* (2003) 107 Cal.App.4th 438, 451 [132 Cal.Rptr.2d 24].) Some endorsements make changes that are relatively minor, while others " 'can add or delete "additional insureds" and additional "insured locations" to those listed on the declarations page, substantially changing the risks and premiums.' " (*Id.* at p. 450, quoting Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 3:188, p. 3-50.) Whether located in an endorsement or elsewhere in a policy, a provision that purports to exclude or substantially limit liability must be conspicuous, plain, and clear to be effective. (*Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 921 [109 Cal.Rptr. 473, 513 P.2d 353]; *Ponder v. Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 719 [193 Cal.Rptr. 632] (*Ponder*).) To be conspicuous, plain, and clear, a limiting provision "must be positioned in a place and printed in a form which would attract a reader's attention," and its substance "must be stated in words that convey the proper meaning to persons expected to read the contract." (*Ponder, supra,* 145 Cal.App.3d at p. 719.)

It bears emphasis that a policy provision limiting liability is not invalid simply because it could have been made easier to find. (See *National Auto. & Casualty Ins. Co. v. Stewart* (1990) 223 Cal.App.3d 452, 460 [272 Cal.Rptr. 625].) Thus, a coverage provision in the text of an insurance policy need not expressly reference the provisions that modify or limit it (*Zubia v. Farmers Ins. Exchange* (1993) 14 Cal.App.4th 790, 796 [18 Cal.Rptr.2d 65]), and a limiting provision need not be mentioned on the declarations page of a policy in order to be valid (*Merrill & Seeley, Inc. v. Admiral Ins. Co.* (1990) 225 Cal.App.3d 624, 631 [275 Cal.Rptr. 280]; *Estate of Murphy* (1978) 82 Cal.App.3d 304, 307–309 [147 Cal.Rptr. 258]). Instead, the controlling concern is whether the insuring document, construed as a whole, puts the average insured on reasonable notice of its provisions and limitations. (See *Feurzeig v. Insurance Co. of the West* (1997) 59 Cal.App.4th 1276, 1282–1283 [69 Cal.Rptr.2d 629].)

In determining whether an insurance policy provides reasonable notice of a lawful limiting provision, we assume the insured reads the entire policy. (See *Fields v. Blue Shield of California* (1985) 163 Cal.App.3d 570, 578–579 [209 Cal.Rptr. 781] [insured has a duty to read the policy and is bound by all of its conspicuous, plain, and clear provisions].) Significantly, the provisions of an endorsement prevail over conflicting provisions in the body of the policy, if the relevant language of the endorsement is conspicuous and free from ambiguity. (*Jane D. v. Ordinary Mutual* (1995) 32 Cal.App.4th 643, 651 [38 Cal.Rptr.2d 131]; see *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 50, fn. 4 [70 Cal.Rptr.2d 118, 948 P.2d 909]; *Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 431 [296 P.2d 801]; *Estate of Murphy*, *supra*, 82 Cal.App.3d at p. 309.)

These rules have been applied as follows. Provisions purporting to limit or exclude liability have been invalidated as inconspicuous when placed on an overcrowded page, or in a "dense pack" format, or in a section bearing no clear heading or relationship to the insuring clause and concealed in fine print. (See *Cal-Farm Ins. Co. v. TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 577 [218 Cal.Rptr. 407], and cases cited therein.) Likewise, terms have been found ambiguous where they could be interpreted to have more than one meaning. (E.g., *Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 765–766 [110 Cal.Rptr.2d 844, 28 P.3d 889]; *Gyler v. Mission Ins. Co.* (1973) 10 Cal.3d 216, 219 [110 Cal.Rptr. 139, 514 P.2d 1219].)

Conversely, an exclusionary clause in the same size print and intensity as the rest of the policy and appearing under an appropriate heading was found conspicuous as a matter of law (*National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 384–385 [131 Cal.Rptr. 42, 551 P.2d 362]), even though it appeared 21 paragraphs after the insuring clause and was the last of eight exclusions (*id.* at p. 390 (conc. & dis. opn. of Tobriner, J.)). Another exclusion was found conspicuous, even though it appeared on an attached page, where the declarations page stated coverage was "AS PER FORM ATTACHED." (*Merrill & Seeley, Inc. v. Admiral Ins. Co.*, *supra*, 225 Cal.App.3d at p. 631.) Similarly, a clause excepting liability for third party negligence was held enforceable where (1) it appeared in a single-page attachment to a policy that was entitled "Amendatory Endorsement," was in a type of a reasonable size, and was located in a subsection having a bolded, all-capitalized subheading entitled "Specifically Excepted Perils," and (2) the language of the exclusionary provision was sufficiently precise and understandable. (*Palub v. Hartford Underwriters Ins. Co.* (2001) 92 Cal.App.4th 645, 652 [112 Cal.Rptr.2d 270].) Moreover, policy language is never deemed ambiguous in the abstract; rather, a provision may be found ambiguous only in the context of the policy and the circumstances at issue. (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867 [21

Cal.Rptr. 2d 691, 855 P.2d 1263]; see *California Casualty Ins. Co. v. Northland Ins. Co.* (1996) 48 Cal.App.4th 1682, 1694 [56 Cal.Rptr.2d 434].)

As set forth below, the terms of Gallahair's E-Z Reader Car Policy, I believe, more than meet the foregoing standards for effectuating a valid and enforceable limitation on the insurer's liability.

First, the declarations page of the E-Z Reader Car Policy expressly lists S9064 as an endorsement to the policy.

Following the declarations page but preceding the main body of the policy is a one-page letter written to the insured from "Your Farmers Agent." The second paragraph of that letter states in full: "The accompanying Declarations Page shows your current coverages resulting from the recent changes made to your policy. Please review your policy changes and file them in a safe place with your original policy documents."

Following that letter but also preceding the main body of the policy is a page entitled "Index of Policy Provisions." The index identifies the multiple parts of the policy, including "PART I—LIABILITY," and explicitly states: "ANY ADDITIONAL PROVISIONS AFFECTING YOUR POLICY ARE ATTACHED AS 'ENDORSEMENTS.' This policy is a legal contract between you (the policyholder) and us (the Company). IT CONTAINS CERTAIN EXCLUSIONS. READ YOUR POLICY CAREFULLY." Thus, the index puts the insured on reasonable notice that any attached endorsements may affect the policy provisions that follow.

Turning to endorsement S9064 itself, we see it is comprised of a single page with the fully capitalized title: "PART I—LIABILITY—PERMISSIVE USER LIMITATION." There is no dispute that the endorsement's terms appear in readily legible print; indeed, the print size and intensity of the endorsement's text is the same as the policy's main text. The endorsement sets forth the permissive user limitation as follows: "It is agreed that PART I—LIABILITY of Your E-Z Reader Car Policy, Your E-Z Reader Motorcycle Policy and Your Motor Home Plus Policy is amended as follows: . . . [¶] To Your E-Z Reader Car Policy, Your E-Z Reader Motorcycle Policy and Your Motor Home Plus Policy, the following is added to the 'Limits of Liability' and 'Other Insurance' sections: [¶] We will provide insurance for an Insured person, other than you, a family member or a listed driver, but only up to the minimum required limits of your state's Financial Responsibility Law of $15,000 per person and $30,000 per occurrence for bodily injury, and $5,000 for property damage." The balance of the endorsement consists of an amended definition of "Insured person," a term which appears in the permissive user limitation and elsewhere in the "LIABILITY" section of Gallahair's

policy, and a definition of "Listed Driver," a new term that the permissive user limitation utilizes. At the end of the endorsement, set apart in its own paragraph, is the following admonishment to the insured: "This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy."[1]

In sum, endorsement S9064 appears on its own page as a separate attachment to the policy. The declarations page lists the endorsement by number, and the insurance policy explicitly informs the insured in two prominent places that the endorsements attached to the policy affect its provisions. The fully capitalized title of endorsement S9064 makes it crystal clear that the endorsement purports to limit the insurer's liability for permissive users. Within the endorsement, the provision that specifically limits liability for permissive users to the legally authorized minimum of $15,000 per person, $30,000 per occurrence for bodily injury, and $5,000 for property damage, appears in its own separate paragraph in print of the same size and intensity of the policy's main text, thus making the provision obvious and distinct, as well as readily legible. The limiting provision is not phrased in esoteric or technical terms, but in language easily understood by a person of average intelligence and experience.

Given the physical characteristics of endorsement S9064, as well as its conspicuous title and plain wording, I find that the endorsement and the permissive user limitation contained therein satisfy the requirements for a valid and enforceable limitation of liability. (See *Palub v. Hartford Underwriters Ins. Co., supra,* 92 Cal.App.4th at p. 652.)

To support its contrary conclusion, the majority points out that *Jauregui v. Mid-Century Ins. Co.* (1991) 1 Cal.App.4th 1544 [3 Cal.Rptr.2d 21] (*Jauregui*) and *Thompson v. Mercury Casualty Co.* (2000) 84 Cal.App.4th 90 [100 Cal.Rptr.2d 596] (*Thompson*) both considered permissive user limitations and found them invalid. Those decisions, however, did not involve endorsements and did not criticize the limiting language at issue here. If anything, they support, rather than undermine, my view that the limitation in endorsement S9064 is effective.

---

[1] Attached as an appendix to this opinion is a copy of endorsement S9064, which the parties submitted in their joint appendix on appeal. The parties do not indicate who made the handwritten markings that appear on the endorsement and offer no explanation for their presence.

In *Jauregui*, the permissive user limitation appeared *only* in the "Other Insurance" section of the main body of the policy; it was not in a separate endorsement as in Gallahair's policy. Because the provision was placed under a heading that was unrelated to its subject and was surrounded by language having nothing to do with exclusions or limitations on coverage, *Jauregui* found it inconspicuous as a matter of law. (*Jauregui, supra,* 1 Cal.App.4th at pp. 1549–1550.) Here, however, the insurer is not seeking enforcement of the permissive user limitation based on its location in the "Other Insurance" section of Gallahair's E-Z Reader Car Policy. Rather, the insurer relies on the fact that endorsement S9064 expressly amends the policy to add the limitation to the exact location in the policy where the *Jauregui* court thought such a provision could most easily be found by an insured—in the liability section of the policy entitled "PART I—LIABILITY," under the most relevant possible subheading entitled "Limits of Liability." (See *Jauregui, supra,* 1 Cal.App.4th at p. 1549.) Furthermore, endorsement S9064 specifically addresses the *Jauregui* court's additional concern over the plainness and clarity of the limiting provision's language by explicitly referring to "the minimum required limits of your state's Financial Responsibility Law of $15,000 per person and $30,000 per occurrence for bodily injury, and $5,000 for property damage." (See *Jauregui, supra,* 1 Cal.App.4th at pp. 1550–1552.)

Similarly, the permissive user limitation in *Thompson* was not in a separate endorsement. Instead, it appeared inconspicuously on the last page of a multipage policy in an unnumbered section that was entitled "Conditions" and contained "30 random and unrelated subsections." (*Thompson, supra,* 84 Cal.App.4th at p. 97.) The limitation was specified as "Condition 23" in that section, but its language was "not bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set apart, or in any other way distinguished from the rest of the fine print." (*Ibid.*) In stark contrast to the provision in *Thompson*, the permissive user limitation in Gallahair's policy is located in a clearly titled, legibly printed, single-page endorsement that unambiguously instructs the insured to add the plainly worded limitation to the Limits of Liability section of the policy, exactly where such limitation belongs. (See *Jauregui, supra,* 1 Cal.App.4th at p. 1549.)

Additionally, the majority concludes that "burying the permissive user limitation" among several other provisions of the same print size and intensity "renders it inconspicuous and potentially confusing to the average lay reader." (Maj. opn., *ante,* at p. 1209.) But no "burying" is in evidence

here. Endorsement S9064 is a single-page attachment that displays a fully capitalized title calling ample attention to the fact that it contains a permissive user limitation. The limitation itself is set forth in its own paragraph. More to the point, the other provisions listed in the endorsement serve to define certain terms that are used in the permissive user limitation, i.e., "Insured person" and "Listed Driver." (See appendix.) I find it beyond comprehension that the majority criticizes endorsement S9064 for its inclusion of such definitions.

Finally, the majority surmises that the average lay reader would not necessarily understand the significance of the permissive user endorsement because the title term "permissive user" is not defined anywhere in the policy. (Maj. opn., *ante*, at p. 1211.) But the fact that a term is not defined in the policy does not render it ambiguous. (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 [77 Cal.Rptr.2d 107, 959 P.2d 265].) Nothing about the term, moreover, suggests that the average insured would have difficulty understanding its likely application in situations where, as here, the insured grants a friend permission to use his or her car. Contrary to the majority's suggestion otherwise, the permissive user provision is not ambiguous in the context of the policy or the circumstances at issue. (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, *supra*, 5 Cal.4th at p. 867; see *California Casualty Ins. Co. v. Northland Ins. Co.*, *supra*, 48 Cal.App.4th at p. 1694.)[2]

To summarize, I believe the permissive user limitation contained in endorsement S9064 is conspicuous, plain, and clear. Unlike the majority, I would find the limitation valid and enforceable in the circumstances before us.

---

[2] Because endorsement S9064 directs the insured to also add the permissive user limitation to the "Other Insurance" section of the policy, the majority finds the endorsement "may erroneously cause the insured to believe the limitation applies *only if the policyholder has other insurance.*" (Maj. opn., *ante*, at p. 1207, italics added.) Not so. If anything, adding the limiting provision both to the "Limits of Liability" section and to the "Other Insurance" section makes clear to the average insured that the limitation applies at all times, regardless whether other insurance is involved.

# APPENDIX

 FARMER

---

### PART I - LIABILITY - PERMISSIVE USER LIMITATION
(Your E-Z Reader Car, Your E-Z Reader Motorcycle
and Your Motor Home Plus Policies)

**s9064**
CALIFORNIA
2nd Edition

It is agreed that PART I - LIABILITY of Your E-Z Reader Car Policy, Your E-Z Reader Motorcycle Policy and Your Motor Home Plus Policy is amended as follows:

Under "Additional Definitions Used In This Part Only":

Item 1. under "Insured person as used in this part means:" is deleted and replaced with the following:

1. You or any family member or a listed driver.

Listed Driver is added as follows:

Listed Driver means a driver expressly rated on *this* policy to operate your insured car (motorcycle / motor home) and for whom a premium has been paid to operate your insured car (motorcycle / motor home).

In Your Motor Home Plus Policy, item 5. under PART I - LIABILITY - "Limits of Liability" is deleted.

In Your E-Z Reader Car Policy, the second paragraph under PART I - LIABILITY, "Other Insurance" is deleted.

To Your E-Z Reader Car Policy, Your E-Z Reader Motorcycle Policy and Your Motor Home Plus Policy, the following is added to the "Limits of Liability" and "Other Insurance" sections:

We will provide insurance for an insured person, other than you, a family member or a listed driver, but only up to the minimum required limits of your state's Financial Responsibility Law of $15,000 per person and $30,000 per occurrence for bodily injury, and $5,000 for property damage.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

90-9064 2ND EDITION 5-87 G-87 S9064201