Filed 2/27/13  Black Silver Enterprises v. Sequoia Ins. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BLACK SILVER ENTERPRISES, INC., | D059682 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00084685-CU-BC-CTL) |
| SEQUOIA INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Linda B. Quinn, Judge.  Reversed.

This case involves an insurance coverage dispute between Black Silver Enterprises, Inc. (Black Silver) and Sequoia Insurance Company (Sequoia).  Black Silver sought coverage under two separate business owners insurance policies for losses resulting from employee theft at its clothing boutiques.  Sequoia concluded that coverage for Black Silver's loss was limited by a coverage extender to $10,000 per policy and refused to pay up to the business personal property limits in the policies.  After a bench trial, the court entered judgment in favor of Sequoia

on Black Silver's breach of contract, bad faith and declaratory relief claims. Black Silver appeals, contending the trial court erred by (1) entering judgment in favor of Sequoia because the purported coverage limitation was not conspicuous, plain and clear, and (2) ignoring its objection to expert testimony on the ultimate issues of the case. We conclude the employee dishonesty coverage limitation is not conspicuous, plain and clear and reverse the trial court's judgment. This conclusion moots Black Silver's claim of evidentiary error.

FACTUAL AND PROCEDURAL BACKGROUND

Black Silver operates five clothing boutiques in San Diego County. Between June 2006 and September 2008, Black Silver's employee, Jennifer Chase, removed a substantial amount of merchandise from the five stores, resulting in a loss to Black Silver in the amount of $65,000. During this time, Black Silver was insured by Sequoia under two business owners policies, one effective February 1, 2007 to February 1, 2008, and the other effective February 1, 2008 to February 1, 2009.

Black Silver notified Sequoia of its loss and made a claim for coverage. Sequoia responded to the claim by paying $10,000 and explained that coverage was limited because Black Silver did not purchase "optional coverage" for employee dishonesty and was covered only up to $10,000 by a coverage extender. After Black Silver disputed the amount of coverage, Sequoia sent another payment of $10,000 as a result of the two successive policies. Black Silver also received payments from another insurance carrier, leaving a balance on its loss of $25,000.

2

Black Silver sued Sequoia, alleging the full amount of its loss was covered under the two Sequoia policies. It further alleged that the coverage extender for employee dishonesty was in addition to coverage afforded by other policy provisions. At trial, Paul Caccamise, the insurance broker who helped Black Silver secure the Sequoia policies, testified that he understood employee dishonesty was covered up to the business personal property limits and the coverage extender provided coverage in excess of those limits.

Sequoia's coverage expert, GailAnn Stargardter, testified that employee dishonesty is not covered by standard business owners policies such as Black Silver's policies. However, an insured has the option to purchase employee dishonesty coverage in two ways. First, an insured can purchase "optional coverages," which would be reflected on the policy's declarations page. Second, Sequoia offered a coverage extender for employee dishonesty up to $10,000. Based on her review of the policy, Stargardter stated that Black Silver did not elect to purchase "optional coverage" because if it had done so, the limit would have been set forth on the declarations page. Instead, Black Silver purchased the coverage extender, which had a limit of $10,000.

After a bench trial, the trial court entered judgment in favor of Sequoia, effectively ruling that Sequoia was not obligated to pay any more under the policies. This appeal followed.

DISCUSSION

A. *Policy Provisions Concerning Employee Dishonesty*

The parties agree that the general provisions of the Sequoia policies excluded coverage for employee dishonesty. However, they disagree as to the effect of the coverage extender. Black Silver contends the coverage extender provided coverage *in addition* to the business personal property limits in the policies, whereas Sequoia maintains it *limited* coverage to $10,000. In regard to employee dishonesty, the coverage extender provided the following:

"As respects coverage under this endorsement, the following is added to the Businessowners Coverage Form **Section I.A. Coverage**, Subsection 5. **Additional Coverages**:

"Coverage for Employee Dishonesty is provided as described in **Section I.G. Optional Coverages**, Subsection **3. Employee Dishonesty** of form BP 0003. The most we will pay under this coverage is the limit of insurance shown for Employee Dishonesty on Page 1 of this endorsement. The requirements of ERISA are provided by this coverage. The limit provided under this endorsement is an additional limit to limits provided under similar coverage if provided elsewhere in this policy. The deductible applicable to business personal property applies to losses under this coverage."

Accordingly, the coverage extender appears to reference two separate provisions in the policy that include a coverage limit for employee dishonesty: (1) optional coverages (section I.G., subsection 3), and (2) page 1 of the endorsement. Under optional coverages, the policies stated, "The most [Sequoia] will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations." However, there is no limit

4

included on the policies' declarations pages. Instead, the only reference to the coverage extender is on a page entitled "Coverages Applying to All Locations," which is located between the property declarations and liability declarations. That page listed the "BOP Coverage Extender" followed by "see Form SEQ 1528," which is the form number of the coverage extender. Although there are spaces to indicate the limit and deductible associated with the coverage extender, those spaces were left blank.

Next, the coverage extender referenced page 1 of the endorsement. That page is located about 60 pages into the policy. It stated the "Limit of Insurance" for "Employee Dishonesty / ERISA" was $10,000.

B. Analysis

Black Silver contends the trial court erred in entering judgment in favor of Sequoia because the purported limitation in the coverage extender was not conspicuous, plain and clear. We agree.

Where, as here, "the material facts are not disputed, interpretation of the policy presents solely a question of law." (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204 (*Haynes*).) "'"[I]t is the duty of the appellate court . . . to make its own independent determination of the meaning of the language used in the [instruments] under consideration."'" (*State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 100.)

We begin with the premise that "[u]nquestionably, California insurers may rely on endorsements to modify printed terms of a form policy." (*Haynes*, *supra*,

5

32 Cal.4th at p. 1208.)  However, "to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.'  [Citation.]  Thus, any such limitation must be placed and printed so that it will attract the reader's attention.  Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson."  (*Id.* at p. 1204.)  "The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." (*Ibid*.)

"A policy provision is ambiguous when it is susceptible to two or more reasonable constructions.  [Citation.]  Language in an insurance policy is 'interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.'  [Citation.]  'The proper question is whether the [provision or] word is ambiguous in the context of *this* policy and the circumstances of *this* case.  [Citation.]"  (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470.)  "Moreover, insurance coverage is '"'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer.'"' [Citation.]"  (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648 (*MacKinnon*).)

Here, the employee dishonesty coverage limitation Sequoia seeks to apply is not conspicuous.  The limitation is not identified on the policies' declarations pages.  Instead, the "BOP Coverage Extender," in which the limitation appears, is

6

listed on a page nestled between the property declarations and liability declarations only with a reference of "see Form SEQ 1528." Although there are spaces to indicate the limit and deductible, those spaces were left blank.

Based on our review of the policies, there is nothing in the declarations pages to alert the insured to any specific limitations in the coverage extender. A reference to a "Form SEQ 1528" is not sufficient as it does not identify the subject matter of the coverage extender or reveal to the reader that the coverage extender modifies the policy or sets forth limits apart from those on the declarations pages. In order to ascertain the limits of the coverage extender, the insured must delve about 60 pages into the policies to get to the first page of the coverage extender. We see no reason why the limits set forth on the first page of the coverage extender could not have been placed within the policies' declarations, where an insured would likely look for policy limits. Regardless, we may have reached a different result as to conspicuousness if, at a minimum, the declarations pages alerted the reader to look for additional limits of insurance in the coverage extender, rather than leaving the space for the "Limit" blank.

Also troubling is that the employee dishonesty provision in the coverage extender is not plain and clear. To the contrary, the provision is ambiguous and susceptible to two or more interpretations. The provision first states that coverage for employee dishonesty is as provided in the policies' "optional coverages" section. The "optional coverages" section directs the reader to the declarations pages for the limit of insurance. As we already discussed, the declarations pages

7

contain no such limit. However, they do include business personal property limits. Given that there was no employee dishonesty limit identified on the declarations pages and the space for the "Limit" next to the reference to the coverage extender was left blank, the insured could reasonably conclude the business personal property limits applied.

Continuing with the confusion, the employee dishonesty provision in the coverage extender next refers the reader to page 1 of the endorsement for the limit of insurance. That page sets forth a limit of $10,000. The coverage extender, however, continues by stating, "The limit provided under this endorsement is an *additional limit* to limits provided under similar coverage if provided elsewhere in this policy." Again, an insured could conclude from this ambiguous language combined with the reference to "optional coverages" that the coverage extender provided $10,000 of coverage in addition to the business personal property limits in the policies. (*MacKinnon*, *supra*, 31 Cal.4th at p. 648 [coverage should be interpreted broadly to afford the greatest possible protection to the insured].)

While the coverage extender uses words that the average person could understand, in order to be "plain and clear," a limitation must be precise and understandable. (*Haynes*, *supra*, 32 Cal.4th at p. 1204.) Based on the foregoing discussion, we find the coverage extender in this case was not "plain and clear" with regard to its limit on coverage for employee dishonesty because it was neither precise nor understandable.

8

In sum, we conclude the employee dishonesty provision in the coverage extender provided $10,000 in coverage in addition to the business personal property limits in the policies.

### DISPOSITION

The judgment is reversed insofar as it fails to award Black Silver the balance of its claim. The matter is remanded to the trial court for consideration of any additional issues raised by this court's disposition, including a determination of the unreimbursed balance of Black Silver's claim, and for entry of a new judgment consistent with this opinion.

Black Silver is entitled to costs on appeal.

MCINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.