Filed 7/24/13  Ghezeli v. First Amer. Title Ins. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| IRAJ GHEZELI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>    Defendant and Respondent. | D061070<br><br><br>(Super. Ct. No. 37-2010-00093181-CU-IC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Gordon & Holmes, Frederic L. Gordon and Edward N. Benito for Plaintiff and Appellant.

Best Best & Krieger, Robert J. Hanna and Kira L. Klatchko for Defendant and Respondent.

Plaintiff Iraj Ghezeli appeals from a judgment in favor of defendant First American Title Insurance Company (First American) in Ghezeli's action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief arising out of First American's refusal to pay attorney fees and costs that Ghezeli incurred in defending two

actions against him involving an open space easement on his property. Ghezeli contends the court erred in deciding there was no coverage for the underlying actions under his title insurance policy with First American. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

In August 2005, Ghezeli purchased a residence (the property or Ghezeli's property) in a common interest development community known as Rancho Diegueno Estates and, in doing so, became a member of the Rancho Diegueno Estates Homeowners Association (HOA). The property is subject to the HOA's recorded covenants, conditions, and restrictions (CC&R's). First American issued a title insurance policy (the policy) to Ghezeli in connection with his purchase of the property.

In 1983, the developer of Rancho Diegueno Estates granted the County of San Diego (the County) an open space easement, which the County recorded. The recorded document describes the open space easement as "[a] perpetual easement for open space over, upon, across and under the subject land and no building, structure or other thing whatsoever shall be constructed, erected, placed or maintained on the subject land except as may be permitted by major use permit issued pursuant to the zoning ordinance of the County . . . and all necessary public utility lines." In 1984, the developer granted an "easement for landscape purposes" (landscaping easement) to the HOA. The landscaping easement encumbers the same area as the open space easement.

Ghezeli's First American policy provided insurance coverage for "actual loss, including any costs, attorneys' fees and expenses" resulting from any of the "Covered Risks" listed in the

---

[1]    The factual background is largely taken from the parties' written statement of stipulated facts submitted to the trial court for purposes of trial.

policy. The policy's Covered Risk No. 4 states: "Someone else has an easement on the land." Covered Risk No. 12 states: "You are forced to correct or remove an existing violation of any covenant, condition or restriction affecting the Land, even if the covenant, condition or restriction is excepted in Schedule B." Schedule B of the policy under the heading "EXCEPTIONS" states: "In addition to the exclusions, you are not insured against loss, costs, attorneys' fees[,] and expenses resulting from[,]" and then lists 22 exceptions to coverage under the policy. Exception No. 4 specifies any easements and/or servitudes affecting easement parcels; Exception No. 14 specifies the County's open space easement; Exception No. 17 specifies the HOA's CC&R's; and Exception No. 18 specifies the HOA's landscape easement. Before issuing the policy, First American provided Ghezeli a "Preliminary Report" that listed the exceptions the policy would contain, including Exception Nos. 4, 14, 17, and 18. The Preliminary Report stated, in bold type: "**Please read the exceptions shown or referred to below . . . carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**"

Before he bought the property, Ghezeli observed that a portion of the property (the disputed area) was improved with a manicured lawn, lighting, signage, a gated driveway, and a horse corral. The disputed area is located within the area of both the open space easement and the landscape easement, and is on or near the boundary line between Ghezeli's property and an adjoining property outside of Rancho Diegueno Estates owned by Robert and Barbara Ponder (the Ponders). Ghezeli learned that the Ponders had constructed the improvements on the disputed area and were keeping their horse in the corral. In addition, the HOA had constructed

3

an entry gate and monument on the disputed area and had maintained landscaping on the disputed area for over 20 years.

In January 2006, the County issued a "Notice of Violation" to Ghezeli and the HOA informing them that the improvements on the disputed area violated the open space easement and had to be removed. The notice gave Ghezeli and the HOA 30 days to correct the violation. In February 2006, the HOA filed an action against Ghezeli and the County for declaratory and injunctive relief, seeking to enjoin them from removing the HOA's landscaping and improvements in the disputed area (the HOA action). In March 2006, the County issued a second Notice of Violation to Ghezeli requiring him to remove "a non-permitted driveway and entrance" from the open space easement area within 30 days.

In May 2006, Ghezeli tendered his defense of the HOA action to First American. In June 2006, while First American was investigating Ghezeli's claim for a defense, Ghezeli filed an action against the Ponders (the Ponder action) seeking damages for trespass and an injunction prohibiting them from trespassing on his property, and requiring them to remove their encroaching improvements from the property and restore the disputed area to its natural state in compliance with the open space easement. After Ghezeli filed the Ponder action, First American denied coverage under the policy for the HOA action, primarily on the ground that the HOA's landscape easement and CC&R's were excepted from coverage under Schedule B of the policy.

In February 2007, the court consolidated the Ponder action and the HOA action. In April 2007, the County filed an action against the HOA, the Ponders, and Ghezeli for damages and injunctive relief that would require them to restore the property subject to the open space

4

easement to its original condition (the County action). The court consolidated the County action with the HOA action and Ponder action. In April 2007, Ghezeli tendered his defense of the County action and retendered his defense of the HOA action to First American. Ghezeli's retender of the defense of the HOA action was based on the fact that in Exception No. 14 of the policy, First American erroneously described the County's open space easement as being an easement for "open space *and park or recreational purposes.*" (Italics added.)

First American again denied coverage for Ghezeli's defense of the HOA action and also denied coverage for his defense of the County action. However, First American accepted coverage for any loss Ghezeli incurred as a result of the erroneous description of the open space easement in Exception No. 14. To determine whether Ghezeli had incurred such loss, First American engaged a professional appraiser to determine whether there had been a diminution in the value of the property attributable to the reference to "park or recreational purposes" in Exception No. 14. The appraiser concluded the erroneous description of the open space easement had not resulted in any diminution in the property's value. Neither First American's error in describing the open space easement in Exception No. 14 nor First American's ultimate coverage determination regarding that error are at issue in this appeal.

In December 2007, Ghezeli entered into a settlement agreement with the County under which Ghezeli agreed to revegetate the open space easement to meet the County's requirements upon a final decision by the superior court that the open space easement was valid and that the Ponders must remove their improvements from it. In exchange, the County agreed to dismiss its action against Ghezeli with prejudice. In May 2008, Ghezeli entered into a second settlement agreement with the County and the HOA that provided he would revegetate and

5

maintain the disputed area and place a fence on his property along the boundary of the open space easement and the adjacent Ponder property. Under the second settlement agreement, the County and the HOA dismissed their actions against Ghezeli with prejudice. In September 2008, the court in the consolidated actions ruled that the open space easement was valid and enforceable and the landscape easement was null and void. The court entered judgment against the Ponders and ordered them to remove "all man[-]made structures" they had installed on the open space easement.

In May 2010, Ghezeli filed the instant action against First American for rejecting his tenders of defense of the County action and HOA action. His operative first amended complaint included causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. The parties stipulated to bifurcate the first cause of action for breach of contract and third cause of action for declaratory relief and to try those causes of action to the court upon stipulated facts, written briefs, matters subject to judicial notice, and oral argument. The parties stipulated to try the second cause of action for breach of the implied covenant of good faith and fair dealing to a jury if Ghezeli prevailed on his first and third causes of action.

The court entered judgment in favor of First American on all three causes of action and filed a statement of decision. The court ruled that the policy expressly excluded coverage for claims resulting from the open space easement in Exception No. 14, which specifies the open space easement, and Exception No. 18, which specifies the HOA's landscape easement. The court noted that First American expressly gave Ghezeli notice of the open space easement exception in its Preliminary Report, and that there was "no dispute that [Exception No. 14]

6

listed the subject open space easement explicitly."  The court found the language of the policy was clear and conspicuous and that First American "specifically excepted from coverage the open space easement.  First American therefore had no duties under the policy with respect to the easement."  Addressing the duty to defend specifically, the court ruled that First American did not owe Ghezeli a duty to defend because Schedule B of the policy explicitly stated he was not insured against loss, costs, attorneys' fees, and expenses resulting from Exception No. 4 and Exception No. 14.[2]

Apparently referring to the phrase "[y]ou are forced to correct or remove an existing violation of any *covenant, condition or restriction* affecting the Land" in Covered Risk No. 12 (italics added), the court ruled that the term "CC&R" does not include an open space easement. The court reasoned that interpreting the term "CC&R" to include an open space easement "would unjustifiably render the word 'easement' as surplusage, and doing so would violate a long established precept of contract interpretation."  The court stated:  "CC&R's and easements are different animals, covered by different policy language.  Thus, [Ghezeli's] argument regarding Covered Risk [No.] 12 fails."

DISCUSSION

"Title insurance policies are governed and construed according to the law applicable to insurance policies in general . . . ."  (*Rosen v. Nations Title Ins. Co.* (1997) 56 Cal.App.4th 1489, 1496, fn. 4.)  When there are no material facts in dispute, the interpretation of an insurance policy is a question of law that we independently review.  (*Haynes v. Farmers Ins.*

---

[2] Under the heading "Decision" in the statement of decision, the court began by stating that the policy "excepted the open space easement," citing Exception Nos. 14 and 18.  Later in the statement of decision, the court cited Exception Nos. 4 and 14 as the bases for its conclusion that First American did not have a duty to defend Ghezeli.

*Exchange* (2004) 32 Cal.4th 1198, 1204; *Bluehawk v. Continental Ins. Co.* (1996) 50 Cal.App.4th 1126, 1131.)

"The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. . . . [¶] The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation.' " (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.)

Ghezeli contends the policy provides coverage under Covered Risk No. 12 for the costs he incurred in defending the consolidated actions because the clear and explicit meaning of the language of Covered Risk No. 12, interpreted in its ordinary and popular sense, applies to the open space easement.[3] Covered Risk No. 12 provides coverage for costs and attorney fees resulting from an insured's being "forced to correct or remove an existing violation of any covenant, condition or *restriction* affecting the Land, even if the covenant, condition or

_____

[3]     In his trial brief, Ghezeli argued that in addition to Covered Risk No. 12, he was entitled to coverage under the policy's Covered Risk No. 4 ("Someone else has an easement on the Land.") and Covered Risk No. 20 ("You are forced to remove Your existing structures because they encroach onto an easement . . . ."). We do not address these covered risks because Ghezeli does not argue on appeal that he is entitled to coverage under them.

restriction is excepted in Schedule B." (Italics added.) Ghezeli argues that the ordinary meaning of the phrase "a violation of any . . . restriction affecting the Land" encompasses a violation of an open space easement because an open space easement is not a true easement but rather a restriction on the use of the affected property or, in Ghezeli's words, "an artifice created by California statutory law to render certain restrictions on use enforceable as equitable servitudes."[4] He argues that Exception No. 14, which excludes coverage resulting from the open space easement, does not apply to his claim for defense costs because Covered Risk No. 12 expressly provides coverage for being forced to correct or remove a violation of a restriction "*even if the covenant, condition, or restriction is excepted in Schedule B.*" (Italics added.)

We reject Ghezeli's contention that the open space easement is not a true easement but rather a restriction on the use of the affected property. "[E]very easement is a restriction upon the right of the property of the owner of the servient tenement . . . ." (*Oliver v. Agasse* (1901) 132 Cal. 297, 300; *Anderson v. Southern California Edison Co.* (1926) 77 Cal.App. 328, 335

---

4       Ghezeli cites Civil Code section 815.1, which defines the term " 'conservation easement' " as "any limitation in a deed, will, or other instrument in the form of an easement, restriction, covenant, or condition, which is or has been executed by or on behalf of the owner of the land subject to such easement and is binding upon successive owners of such land, and the purpose of which is to retain land predominantly in its natural, scenic, historical, agricultural, forested, or open-space condition." The easement at issue in this case is designated a "perpetual easement for open space." Government Code section 51075, subdivision (d), of the Open-Space Easement Act of 1974 defines "open-space easement" as "any right or interest in perpetuity or for a term of years in open-space land acquired by a county, city, or nonprofit organization pursuant to this chapter where the deed or other instrument granting such right or interest imposes restrictions which, through limitation of future use, will effectively preserve for public use or enjoyment the natural or scenic character of such open-space land." Whether the easement in question in this case qualifies as a conservation easement or open space easement or both is not material to our analysis of the coverage issue presented in this appeal.

[an easement is a restriction on the property rights of the owner of the servient tenement].) The fact that an open space or conservation easement restricts the servient tenement owner's use of land more extensively than other easements, such as a utility easement or easement for ingress and egress, does not disqualify it as an easement under the law or within the meaning of the policy.[5]

The policy's Covered Risk No. 4 provides coverage for losses resulting from "[s]omeone else [having] an *easement* on the land." (Italics added.) As a general rule of contract interpretation, " '[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' [Citation.] The rule's effect, among other things, is to disfavor constructions of contractual provisions that would render other provisions surplusage." (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503.) Interpreting the word "restriction" in Covered Risk No. 12 to include an easement would render Covered Risk No. 4 surplusage. Accordingly, the trial court did not err in effectively ruling that Covered Risk No. 12 does not apply to losses resulting from the open space easement.

Even if we were to accept Ghezeli's argument that the open space easement is a "restriction affecting the land" within the meaning of Covered Risk No. 12, we would conclude

---

[5] Ghezeli cites the policy's definition of "[e]asement" as "the right of someone else to use the Land for a special purpose" and similar dictionary and statutory definitions in arguing that "easements and conservation easements are different animals . . . ." However, an open space easement falls within the policy's definition of "easement," as it confers to the public the right to use or enjoy the natural character of the servient land. (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1353, fn. 1 [" 'An open-space easement is an instrument whereby the owner relinquishes to the public the right to construct improvements upon the land, effectively preserving for public use or enjoyment the natural or scenic character of the open-space land.' "].)

that losses resulting from the open space easement are excluded from coverage under Exception No. 14.  The contract interpretation problem that arises if the word "restriction" in Covered Risk No. 12 is construed to include the open space easement is that the language of Covered Risk No. 12 conflicts with the language of Exception No. 14.  Covered Risk No. 12 provides, *generally*, that the insured's being forced to correct or remove a violation of a restriction is a covered risk even if the restriction is excepted in Schedule B, which includes Exception No. 14.  However, Exception No. 14 *specifically* excepts from coverage losses resulting from the open space easement.

Two rules of construction govern our resolution of the inconsistency between Covered Risk No. 12 and Exception No. 14.  First is the rule that in construing an instrument, "the intention of the parties, is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former.  So a particular intent will control a general one that is inconsistent with it."  (Code Civ. Proc., § 1859; Civ. Code, § 3534; *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 386 [specific language of exclusion overrides general coverage provisions of insuring clause].)  Accordingly, the specific exclusion in Exception No. 14 of coverage for losses resulting from the open space easement overrides the more general language in Covered Risk No. 12 that is inconsistent with Exception No. 14.

Even more on point is the rule of construction codified in Civil Code section 1651, which provides:  "Where a contract is partly written and partly printed, *or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special*

11

*reference to the particular parties and the particular contract in question*, the written parts control the printed parts, and *the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded.*"  (Italics added.)

In the insurance context, this codified rule means that specially prepared portions of a policy that address specific circumstances relevant to a particular insured, like the exceptions set forth in Schedule B of Ghezeli's First American policy, control the standard printed parts of the policy to the extent they are inconsistent.  As the California Supreme Court has stated, "[I]f there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls.[6]  Likewise, under the provisions of section 1651 of the Civil Code, the . . . specially prepared portions of the policy control over those which are printed or taken from a form."  (*McConnell v. Underwriters at Lloyds of London* (1961) 56 Cal.2d 637, 640; *Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*(1998) 66 Cal.App.4th 1080, 1087 [When information or coverage provisions in a policy's declarations tailored for that particular policy conflict with general information in the preprinted forms, the former prevails over the latter.].)

We recognize that although specially prepared portions of an insurance policy control over portions that are printed or taken from a form, "to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and

---

6        An "endorsement" is simply an amendment to or modification of an insurance policy. (*Adams v. Explorer Ins. Co.* (2003) 107 Cal.App.4th 438, 452; Black's Law Dict. (9th ed. 2009) p. 107, col. 2; Ins. Code, § 10274 [The term " 'endorsement' " in a disability policy "means any amendment, change, limitation, alteration or restriction of the printed text of a policy by a rider upon a separate piece of paper made a part of such policy."].)  Accordingly, Schedule B of Ghezeli's First American policy is, in effect, an endorsement because it amends the main body of the policy by identifying specific exceptions to coverage that affect or potentially affect Ghezeli's property.

clear.' [Citation.] Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson. [Citations.] The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." (*Haynes v. Farmers Ins. Exchange*, *supra*, 32 Cal.4th at p. 1204.)

In the present case, the exceptions to coverage listed in Schedule B satisfy these requirements. The heading of Schedule B is the word "**EXCEPTIONS**" in bold type, followed by the statement: "In addition to the exclusions, you are not insured against loss, costs, attorneys' fees, and expenses resulting from [the listed exceptions]." Exception No. 14 regarding the open space easement and Exception No. 18 regarding the HOA's landscape easement over the same area are precise and understandable and stated in words that are part of the working vocabulary of the average layperson. Moreover, the Preliminary Report that First American provided to Ghezeli urged him, in bold type, to "**[p]lease read the exceptions shown or referred to below . . . carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**" We conclude that Exception No. 14 is sufficiently conspicuous, plain, and clear to be enforceable.

The term "restriction" in Covered Risk No. 12 is general and broad. On its face and read in isolation, it could refer to a restriction in a declaration of CC&R's or any other devise that restricts the use of land, including an open space easement. However, Exception No. 14 in Schedule B makes it clear that whatever other types of restrictions may be contemplated by Covered Risk No. 12, losses resulting from the County's open space easement are excluded

13

from its coverage. Because Exception No. 14 is a specially prepared provision that was tailored for Ghezeli's particular policy, and Covered Risk No. 12 is a general insuring clause in First American's standard form policy, Exception No. 14 controls over Covered Risk No. 12 to the extent the two provisions are inconsistent.

## DISPOSITION

The judgment is affirmed. First American is awarded its costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.


HALLER, J.