Filed 10/28/13  Hollingsworth v. ProBuilders Specialty Ins. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GERALD V. HOLLINGSWORTH et al., | B239118 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC442362) |
| PROBUILDERS SPECIALTY INSURANCE CO., | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed.

Gary Hollingsworth, in pro. per., and for Plaintiffs and Appellants.

Branson, Brinkop, Griffith & Strong, Michele O. Blais, and David P. McDonough for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiffs Gerald and Ivy Hollingsworth contracted with Sash & Door Specialty, doing business as JCC (JCC), to perform substantial remodeling and construction work on their home in San Marino. The work was never completed and the Hollingsworths suffered damage to their home and loss of personal property. They brought a lawsuit against JCC for damages. JCC's commercial general liability (CGL) insurer refused to defend the suit. JCC and the Hollingsworths settled, and JCC assigned its claims against its insurer, ProBuilders Specialty Insurance Company, RRG (ProBuilders), to the Hollingsworths.

In the instant case, the Hollingsworths bring the assigned claims against ProBuilders. They appeal from an order of dismissal after the trial court sustained without leave to amend the demurrer of ProBuilders to the Hollingsworths' fourth amended complaint (complaint). The trial court held the insurance policy at issue did not cover the Hollingsworths' claims against JCC, and moreover, they had not pleaded their fraud cause of action with sufficient particularity.

The Hollingsworths also appeal from an order denying their four motions to compel discovery from ProBuilders and imposing sanctions for those unsuccessful motions. We affirm both the discovery order and the judgment for ProBuilders.

## FACTS AND PROCEDURE

### 1. *Allegations of Complaint*

On or about August 7, 2007, the Hollingsworths contracted with JCC to perform remodeling and construction work on their home in San Marino.[1] The Hollingsworths asked JCC whether it had liability insurance that would cover any accident occurring during construction work. They required JCC to obtain more comprehensive CGL coverage than JCC would have obtained for itself. They agreed JCC's bid and fee would reflect this additional cost of coverage. JCC obtained a CGL policy from ProBuilders covering a minimum of $1 million per occurrence.

---

[1] The complaint identifies the contractor as "JJC" in one place and "JCC" in another. The insurance policy identifies the contractor as "JCC." We will refer to it as JCC.

JCC was supposed to add a second story master bedroom suite and do work on the entry way, living room, dining room, breezeway, and kitchen of the Hollingsworths' home. The contractor was to preserve two rear bedrooms, an adjoining bathroom, and the study in their original condition. The home was a single-story structure containing three bedrooms and two bathrooms in approximately 1,800 square feet. After JCC completed its work, the home would be a two-story structure with four bedrooms and three bathrooms in approximately 2,800 square feet. JCC agreed to complete the work in six months.

The Hollingsworths moved out of their home and into another home with the expectation they would be displaced for only six months. During the renovation project, JCC had complete control over the Hollingsworths' property. During the first six weeks of work, the Hollingsworths paid JCC $60,000. Almost immediately after JCC commenced work, problems developed. Inadequate supervision and incompetent laborers caused extensive damage to the home. The Hollingsworths described the damage as follows:

> "[E]xcessive and improperly sequenced demolition occurred to the existing structure. Walls that should not have been removed were torn down. Windows and roofs were removed from the remaining structure almost immediately, leaving the interiors open to the elements, and no measures were taken to cover the roof or the window openings or to protect the open interiors from the elements or inclement weather at all. After removal of the roof, the front exterior wall of the house, which was to remain, was not adequately supported so that it collapsed. Extensive damage occurred to the interiors, particularly during rainstorms in November and early December of 2007. In particular, the two rear bedrooms and adjoining bathroom and the study that were to be preserved were destroyed beyond repair by water damage and mold infestation, and the existing hardwood floors in the rear bedrooms were water damaged, stained and warped beyond repair. In addition, the existing hardwood floors in the living room and the dining room were removed, exposing the wood joists [*sic*] below, which were damaged by water and other elements beyond repair, and could not be salvaged."

Four months into the six-month job, the Hollingsworths terminated JCC on December 10, 2007, following numerous requests to adequately staff the job and perform

3

the work. JCC also failed to secure the property during construction and lock the garage such that personal property stored in the garage was missing when the Hollingsworths regained control of the property. The damage caused by JCC caused the Hollingsworths to be displaced from their home for more than two years. Their monetary damages amounted to no less than $800,000.

In January 2008, the Hollingsworths retained an attorney and tried to informally resolve their claims against JCC. Their attorney also contacted ProBuilders as JCC's CGL insurer. ProBuilders sent an agent or adjuster to the Hollingsworths' home in February 2008; the agent inspected the property and met with the Hollingsworths' attorney, who explained the events leading to the damage to the home. ProBuilders refused to participate in informal dispute resolution with JCC and the Hollingsworths. In July 2008, the Hollingsworths filed a lawsuit against JCC in Los Angeles Superior Court, *Hollingsworth v. Sash & Door Specialty dba JCC*, case No. GC041251 (the underlying action), alleging negligence and other causes of action. JCC promptly tendered defense of the action to ProBuilders. ProBuilders refused to defend the underlying action and denied coverage. It maintained the damages suffered by the Hollingsworths were not the result of an "occurrence" within the meaning of the policy, or certain exclusions applied.

In February 2010, the Hollingsworths and JCC settled the underlying lawsuit for $60,000. JCC also agreed to a stipulated judgment against it for $450,000, plus costs and interest at the legal rate from December 10, 2007. No part of the stipulated judgment has been paid. Additionally, JCC assigned all of its claims against ProBuilders to the Hollingsworths.

The Hollingsworths thus brought the causes of action alleged in the complaint as assignees of JCC. They alleged causes of action against ProBuilders for breach of the insurance policy, breach of the covenant of good faith and fair dealing, fraud, and to enforce the judgment against JCC under Insurance Code section 11580.[2] The

---

[2]    The complaint also alleges two causes of action against another defendant, JAD Insurance Services, Inc. (JAD), who is not a party to this appeal. JAD was JCC's insurance broker and allegedly provided JCC with the Probuilders' policy.

4

Hollingsworths alleged ProBuilders' failure to investigate, defend, and indemnify JCC in the underlying action breached the insurance policy and the covenant of good faith and fair dealing. They further alleged ProBuilders committed fraud by misrepresenting to them, JCC, and the general public that ProBuilders "provided full and complete insurance coverage for contractors" and "would defend and indemnify contractors such as [JCC] for any insurable claims made against them." ProBuilders allegedly made these misrepresentations "through advertisements and disclosures published at various times and through numerous media, including publications provided to [JCC], for the express purpose . . . of providing proof of insurance coverage to [JCC]'s customers," including the Hollingsworths.

### 2. The Insurance Policy

The Hollingsworths incorporated by reference and attached to the complaint the insurance policy JCC purchased from ProBuilders. Under the section entitled "Coverages," the policy provides in pertinent part: "We will pay those sums that an insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. . . . [¶] . . . This insurance applies to bodily injury or property damage only if: [¶] . . . The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory . . . ." (Boldface omitted.) The policy defines an occurrence as "an accident, including a continuous or repeated exposure to substantially the same generally harmful condition." It defines property damage as "physical injury to tangible property, including all resulting loss of use of that property." Further, "[a]ll such loss of use shall be deemed to occur at the time of the physical injury that caused it. Loss of use of tangible property unaccompanied by physical injury to that property is not property damage." (Boldface omitted.) The policy also provides ProBuilders has the duty to defend the insured "against any suit seeking damages to which this insurance applies." (Boldface omitted.)

Exclusion J.(4) of the policy excludes from coverage "[p]roperty damage to:" "Personal property in the care, custody or control of any insured, whether or not such

5

care, custody or control was exclusive at the time of such property damage. . . . " (Boldface omitted.)

Exclusion J.(5) of the policy excludes from coverage "[p]roperty damage to:" "Any real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations . . . ."  (Boldface omitted.)  For purposes of exclusion J.(5), the policy provides:  "[Y]ou or any contractors or subcontractors working directly or indirectly on your behalf shall be deemed to be 'performing operations' from the time when you or the contractors or subcontractors begin work until such operations are complete as set forth in paragraph 19.b of Section V -- Definitions -- (Products-Completed Operations Hazard)."  (Boldface and capitalization omitted.)

Paragraph 19.b of section V, in turn, provides:  "Your work will be deemed completed or abandoned at the earliest of the following times:  [¶]  . . .  [¶]  . . . When you refuse to continue performance of your work under any contract or when your continued work at the job site or your contract has been terminated by anyone for any reason." (Boldface omitted.)

### 3.  *ProBuilders' Demurrer*

ProBuilders demurred to the complaint, arguing the damage to the Hollingsworths' home was excluded from coverage under exclusion J.(5) because it arose while JCC was "performing operations" on the property.  It further argued the missing personal property was not covered under the definition of "property damage" and was excluded by exclusion J.(4).  Additionally, it argued the Hollingsworths failed to plead fraud with specificity, and given they were then on the fifth iteration of the complaint, they could not do so.

The trial court agreed with ProBuilders, and on March 13, 2012, it sustained the demurrer without leave to amend.  The court entered an order of dismissal with prejudice as to ProBuilders on May 8, 2012.  The Hollingsworths filed their notice of appeal prematurely, on April 17, 2012.  We exercise our discretion to treat the prematurely filed notice of appeal as taken from the order of dismissal.  (Cal. Rules of Court, rule 8.104(d);

6

*Vitkievicz v. Valverde* (2012) 202 Cal.App.4th 1306, 1310, fn. 2 [explaining order sustaining demurrer without leave to amend is not appealable and construing appeal as taken from later filed order of dismissal].)

### 4. Discovery Motions

Before the demurrer proceedings, the Hollingsworths filed four motions to compel discovery from ProBuilders. The trial court denied all four motions and imposed sanctions totaling $8,137.50 on the Hollingsworths. They filed a notice of appeal from the discovery order. We granted their motion to consolidate the discovery appeal with the appeal from the order of dismissal.

## STANDARD OF REVIEW

When the trial court sustains a demurrer, we review the complaint de novo to determine whether it alleges facts sufficient to constitute a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) When written documents are attached to the complaint and incorporated by reference, we consider them as part of the complaint. (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800.) We review the decision to deny leave to amend for abuse of discretion. (*Blank v. Kirwan*, at p. 318.) We review the trial court's imposition of a discovery sanction for abuse of discretion. (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1435.) "'A court's decision to impose a particular sanction is "subject to reversal only for manifest abuse exceeding the bounds of reason."'" (*Ibid.*)

## DISCUSSION

### 1. The Insurance Policy Did Not Cover the Underlying Action

An insurer has no duty to defend or indemnify when there is no possibility for coverage under the terms of the insurance policy. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19; *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.* (2007) 148 Cal.App.4th 976, 993.) The interpretation and application of an insurance policy to undisputed facts is a question of law subject to our independent review. (*State Farm General Ins. Co. v. Frake* (2011) 197 Cal.App.4th 568, 577.) The normal rules of contract interpretation apply. (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198,

7

1204 (*Haynes*).)  The fundamental goal is to give effect to the mutual intention of the parties as determined, if possible, solely from the written provisions of the insurance policy.  (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37.)  If the policy language is clear and explicit, it governs.  (*Ibid.*)  We generally construe an asserted ambiguity against the party who caused the ambiguity to exist, i.e., the insurer.  (*Ibid.*)  A policy provision is ambiguous when it is capable of two or more reasonable constructions.  (*Ibid.*)  But we will not adopt a strained or absurd interpretation to find an ambiguity where none exists.  (*Ibid.*)

"[I]nsurers often limit coverage in exclusions despite broad general coverage provisions."  (*Westoil Terminals Co., Inc. v. Industrial Indemnity Co.* (2003) 110 Cal.App.4th 139, 149.)  The insurer "has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected."  (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432.)  The insured has the burden of proving his or her claim is within the basic scope of coverage, while the insurer has the burden of proving exclusions to coverage.  (*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd., supra*, 148 Cal.App.4th at p. 984.)  Provisions that limit coverage reasonably expected by an insured must be conspicuous, plain, and clear.  (*Haynes*, *supra*, 32 Cal.4th at p. 1204.)  Although we normally interpret insuring clauses broadly and strictly construe exclusions, "'where an exclusion is clear and unambiguous, it is given its literal effect.'"  (*Westoil Terminals Co.*, at p. 146.)

A.  *Damage to the Residence*

Mindful of these guiding principles, we conclude the policy at issue did not cover the Hollingsworths' claims against JCC for damage to their residence.  Exclusion J.(5) of the policy precludes coverage for property damage to any real property on which JCC was performing operations and which arose out of JCC's operations, from the time JCC commenced work in August 2007 to the time the Hollingsworths terminated JCC in December 2007.  The conditions and damage to their home that the Hollingsworths described as resulting from JCC's incompetent work -- excessive and improperly

8

sequenced demolition, failure to protect the interiors from the elements, and so forth -- was all property damage falling under this exclusion.

To the extent they are claiming loss of use damages for the period they were displaced from their home after terminating JCC, such loss of use is also not covered. The policy stated loss of use of property was included in "property damage," but such loss of use was "deemed to occur at the time of the physical injury that caused it." Because their loss of use was allegedly caused by JCC's ongoing operations before the Hollingsworths terminated it, the loss of use was deemed to occur during that time. It thus also fell under exclusion J.(5) for property damage during ongoing operations.

The Hollingsworths contend we must disregard exclusion J.(5) because it is so broad as to render coverage illusory. We are not persuaded. Exclusion J.(5) is based on a standard exclusion in the CGL form published by the Insurance Services Office (ISO) and used by many insurers. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2007) ¶¶ 7:10, 7:1443.1.) The nearly identical exclusion in the ISO form excludes coverage for property damage to "'[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.'" (*Id.* ¶ 7:1443.1.) This exclusion is one of the "faulty workmanship" exclusions in the ISO form that "preclude coverage for deficiencies in the insured's work." (*Clarendon America Ins. Co. v. General Security Indemnity Co. of Arizona* (2011) 193 Cal.App.4th 1311, 1325.) The reason is that CGL policies are not designed to provide contractors with coverage for claims that their work was inferior or defective. (*Ibid.*) The contractor bears the risk of faulty workmanship, which is generally considered a risk of doing business and is not passed on to the CGL insurer. (*Ibid.*; *St. Paul Fire & Marine Ins. Co. v. Coss* (1978) 80 Cal.App.3d 888, 894 ["unlike malpractice insurance," faulty workmanship exclusions mean that CGL policy "was not intended to indemnify the contractor (and through him the owner) for direct damages resulting because the contractor furnished defective materials or workmanship"].)

Thus, under this standard exclusion, "[t]he insurer is not obligated to indemnify a policyholder for property damage that occurs while the insured is performing operations on that property." (*Clarendon America Ins. Co. v. General Security Indemnity Co. of Arizona*, *supra*, 193 Cal.App.4th at p. 1325; see 9A Couch on Insurance (3d ed. 2005) § 129:20 [form exclusion J.(5) "has generally been applied to preclude coverage for damages to particular real property resulting from or arising out of the ongoing operations of the insured"].)  While the exclusion may be characterized as broad, it is not so broad that coverage is illusory because no property damage at all is covered.  For instance, coverage for damage to property on which the contractor is *not* working, such as damage to neighboring property, is not precluded by this exclusion.  Thus JCC was responsible for damage its defective work caused to the Hollingsworths' real property under the policy, not the insurer.

The Hollingsworths also contend we should disregard exclusion J.(5) because it is broader than the ISO form language, and further, it is not conspicuous, plain, and clear.  We also reject these contentions.  The ISO form excludes property damage to "[t]hat particular part of real property" on which the insured is working, while the policy at issue excludes property damage to "[a]ny real property" on which the insured is working.  The difference does not render the exclusion invalid.  The Hollingsworths have not cited any authority stating insurers must conform exactly to the ISO form, and an insurer has the right to limit coverage under a policy issued by it.  We must respect the plain language of that limitation when the insurer has done so.  (*Continental Cas. Co. v. Phoenix Constr. Co., supra*, 46 Cal.2d at p. 432; see also *TIG Ins. Co. of Michigan v. Homestore, Inc.* (2006) 137 Cal.App.4th 749, 755 [when policy is clear and unequivocal, only thing insured may reasonably expect is coverage afforded by plain language of the policy].)  And despite the Hollingsworths' insistence to the contrary, the phrase "any real property" is plain.  We must construe the policy language in the context of the case at hand and not in the abstract.  (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co., supra*, 9 Cal.4th at p. 37.)  The Civil Code defines real property as land and fixtures and improvements on the land.  (Civ. Code, § 658; *Krouser v. County of San Bernardino*

10

(1947) 29 Cal.2d 766, 769.) "Any real property" on which JCC was performing operations is easily understood in this case as referring to the Hollingsworths' residence, a fixture on the land that JCC was supposed to transform with renovations, so much so that the family vacated the residence and gave JCC control over it.

In addition to being unambiguous, exclusion J.(5) was conspicuous. At the top of the first page of the policy, in larger type than the rest and in bold, all capital letters, the policy stated: "Read this policy carefully[.] [¶] Coverage provided by this policy may be different from, and more restrictive than, other insurance policies you have purchased or are familiar with." (Boldface and capitalization omitted.) Directly under that, in slightly smaller type that was bolded and underlined, the policy read: "Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." (Boldface and underlining omitted.) On pages one and two of the policy, in the insuring clauses setting forth the duty to indemnify and the duty to defend, the policy expressly referenced exclusions by saying the insurer's duties were "further limited as provided in SECTION III – LIMITS OF INSURANCE or in SECTION I of the policy titled EXCLUSIONS: COVERAGES A AND B." Then, under the heading "EXCLUSIONS: COVERAGES A AND B," and under a subheading called "DAMAGE TO PROPERTY," the policy sets forth exclusion J.(5) (and exclusion J.(4), discussed in the next subpart). The pertinent exclusions are on page five of the 24-page policy, not buried in fine print or an attachment somewhere. In short, the policy sufficiently called attention to the exclusions.

B. *Loss of Personal Property*

The policy also did not cover the Hollingsworths' loss of personal property, which allegedly disappeared from their garage sometime during the work by JCC. First, theft of personal property falls outside the definition of "property damage" because, under the policy, "[l]oss of use of tangible property *unaccompanied by physical injury to that property* is not property damage." (Italics added and boldface omitted.) The complaint does not allege the personal property was physically injured, only that it was missing because JCC failed to secure the garage when JCC had control of the residence.

11

Moreover, "'[l]oss of use' of property" in a CGL policy is distinct from "'loss' of property." (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 818.) The permanent loss of property or conversion of property is not property damage when the policy defines property damage as the "loss of use." (*Id.* at pp. 817-818.) If the insurer wanted to insure "loss of property" as opposed to "loss of use" of that property, the policy would have so provided. (*Id.* at p. 819.)

Even if the definition of property damage did not preclude coverage, exclusion J.(4) precluded coverage for the Hollingsworths' loss of personal property. That exclusion precludes coverage for damage to personal property in the care, custody, or control of the insured, whether or not such care, custody, or control was exclusive. The complaint demonstrates JCC had care of the personal property because JCC was allegedly responsible for securing the garage where the property was stored, and JCC had control over the whole residence while it was working on the project.

C. *Application to Specific Causes of Action*

In sum, the policy did not cover any of the damage the Hollingsworths claimed. The absence of coverage conclusively negates the cause of action for breach of contract because no duty to defend or indemnify existed under the policy. (*Horsemen's Benevolent & Protective Assn. v. Insurance Co. of North America* (1990) 222 Cal.App.3d 816, 822.) The trial court did not err in sustaining the demurrer as to this cause of action.

Nor did the court err in sustaining the demurrer to the cause of action for breach of the implied covenant of good faith and fair dealing. When there is no potential for coverage under the policy and hence no duty to defend, there is no action for breach of the implied covenant "because the covenant is based on the contractual relationship between the insured and the insurer." (*Waller v. Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 36.)

Lastly, the court did not err in sustaining the demurrer to the cause of action for judgment under Insurance Code section 11580. Subdivision (b)(2) of section 11580 requires certain insurance policies to provide "that whenever judgment is secured against the insured . . . in an action based upon . . . property damage," the judgment creditors

12

may recover on the judgment by suing the insurer on the policy and subject to the policy's terms and limitations.  As part of the judgment creditors' case, they must prove "the policy covers the relief awarded in the judgment."  (*Wright v. Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998, 1015.)  The Hollingsworths cannot prove the policy covers the stipulated judgment in the underlying action because ProBuilders had no duty to defend or indemnify JCC in that case.

The Hollingsworths have not demonstrated a reasonable possibility they can cure these defects by amendment, in light of the policy language.  (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)  Accordingly, we affirm the court's decision to deny leave to amend these causes of action.

### 2. *The Hollingsworths Did Not Plead Fraud Sufficiently*

"The essential allegations of an action for fraud are a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damage. [Citation.]  Every element of the cause of action for fraud must be alleged in the proper manner and the facts constituting the fraud must be alleged with sufficient specificity to allow defendant to understand fully the nature of the charge made."  (*Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 109.)  Fraud is subject to strict requirements of particularity in pleading.  (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216, superseded by statute on other grounds; *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 73 [particularity requirement necessitates pleading "'how, when, where, to whom, and by what means the representations were tendered'"].)  Because plaintiffs must allege every element of fraud with factual specificity, we will not ordinarily invoke the policy of liberally construing pleadings to sustain a pleading defective in any material respect.  (*Stansfield, supra*, at p. 73.)  The requirement of specificity means plaintiffs alleging fraud against a corporate entity must state "the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157.)

13

The Hollingsworths are now on their fifth iteration of the complaint, and the trial court has repeatedly sustained a demurrer to their fraud cause of action for lack of particularity. The trial court did not err in finding a lack of particularity in this latest complaint. The Hollingsworths state in vague terms that ProBuilders made misrepresentations to them, JCC, and the general public "through advertisements and disclosures published at various times and through numerous media, including publications provided to [JCC]." They do not state who at ProBuilders made these misrepresentations, what exactly these alleged advertisements said, what media outlet published them, or when they were published. We acknowledge the particularity requirement is relaxed when the allegations show the particular facts lie more in the knowledge of the defendant. (*Tarmann v. State Farm Mut. Auto. Ins. Co., supra*, 2 Cal.App.4th at p. 158.) But we do not consider this exception applicable when, as here, the insurer has no more reason to know these facts than the plaintiffs. (*Ibid.*) The Hollingsworths state misrepresentations were made directly to them and JCC, and JCC allegedly used some false publications provided by ProBuilders to show proof of insurance to its customers. As customers of JCC, assignees of JCC's claims against ProBuilders, and a direct recipient of the alleged misrepresentations, they would have just as much reason to know specifics as ProBuilders would.

Even in cases of unfair business practices in which the plaintiffs allege mass advertising campaigns, with misrepresentations occurring at various times and through numerous media outlets, the plaintiffs should set forth a representative selection of advertisements and indicate the language or images that constitute untruths. Such an approach represents a balance between the particularity requirement and the "importance of avoiding pleading requirements so burdensome as to preclude relief in cases involving multiple misrepresentations." (*Committee on Children's Television, Inc. v. General Foods Corp., supra*, 35 Cal.3d at p. 218.) Although this is not an unfair business practices action, the Hollingsworths have vaguely alleged an advertising campaign at various times and through numerous media. But they have not provided even one representative selection of an advertisement.

14

The Hollingsworths had numerous opportunities to plead fraud with particularity and have not declared what additional facts they might allege at this point.  Under these circumstances, we conclude the trial court properly denied leave to amend this cause of action.

### 3.  *The Hollingsworths Fail to Show the Court Erred in Imposing Discovery Sanctions*

In the second part of this consolidated appeal, the Hollingsworths argue the trial court erred in denying their four motions to compel discovery.  We are affirming the judgment in favor of ProBuilders, in light of our conclusions in parts 1. and 2. of the Discussion.  Therefore, the Hollingsworths' argument that we should compel ProBuilders to produce certain discovery is moot.  The only issue remaining is whether the trial court abused its discretion in imposing sanctions totaling $8,137.50 on the Hollingsworths when it denied the four discovery motions.

The Hollingsworths' four motions to compel involved a total of 47 form or special interrogatories, 16 requests for production of documents (RFP's), and five requests for admission (RFA's).  The Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) states the court "shall impose a monetary sanction" on any party who unsuccessfully makes a motion to compel responses to any of these discovery procedures, unless the court finds the moving party "acted with substantial justification or that other circumstances make the imposition of the sanction unjust."  (Code Civ. Proc., §§ 2030.300, subd. (d) [interrogatories], 2031.310, subd. (h) [RFP's], 2033.290, subd. (d) [RFA's].)  The Hollingsworths had the burden of proving substantial justification for bringing the unsuccessful motions.  (*Doe v. United States Swimming, Inc., supra*, 200 Cal.App.4th at p. 1435.)  On appeal, they also have the burden of demonstrating the trial court erred when it impliedly found no substantial justification for the motions to compel.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 [trial court's ruling presumed correct and appellant must affirmatively demonstrate error].)

The Hollingsworths have failed to cogently argue substantial justification for the motions.  Their briefs consist largely of paraphrasing the discovery requests and responses, bare assertions that the requests are relevant without any explanatory argument

15

or citation to authority, and similarly conclusory assertions that the trial court was wrong to deny the motions. And not all of these elements are present regarding every discovery request. At times, all they do is paraphrase the request. Other times, they simply paraphrase the request and assert it is relevant. Still other times, they do not paraphrase the request but assert ProBuilders' response was wrong. In short, they do not provide intelligible legal argument as to why the court erred in imposing sanctions. "One cannot simply say the court erred, and leave it up to the appellate court to figure out why." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) "'An appellate brief "should contain a legal argument with citation of authorities on the points made. . . ."'" (*Ibid.*) We are not required "'to act as counsel for . . . any appellant and furnish a legal argument as to how the trial court's rulings'" constituted an abuse of discretion. (*Ibid.*) For these reasons, we decline to reverse the portion of the court's discovery order imposing sanctions.

## DISPOSITION

The judgment and order are affirmed. Respondent to recover costs on appeal.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

16